## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WILLIE STANLEY,

            Plaintiff,                                 CASE NO.:

        v.                                      JURY TRIAL DEMANDED

LOOMIS ARMORED US, LLC,

            Defendant.

_____/

## COMPLAINT

Plaintiff, WILLIE STANLEY ("Plaintiff" and/or "Mr. Stanley"), by and through his undersigned counsel, hereby complains of Defendant, LOOMIS ARMORED US, LLC ("Defendant" and/or "LOOMIS) and alleges as follows:

## INTRODUCTION

1.    This case involves an individual black man who was unlawfully discriminated against and retaliated against by his employer on the basis of his race and color.

2.    Plaintiff seeks monetary relief to redress the Defendant's unlawful employment practices in violation of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes *et seq.* ("FCRA"), and the Miami-Dade Human Rights Ordinance 97-17, Article IV, Chapter 11A, *et seq.* ("MDHRO"). Additionally, this action seeks to redress Defendant's deprivation of Plaintiff's personal dignity and his right to pursue equal employment opportunities.

## PARTIES

3.    Plaintiff is an individual Black male, a resident of Miami-Dade County, Florida, over the age of eighteen years, and otherwise *sui juris*.

1

4.      Defendant, LOOMIS ARMORED US, LLC, (hereinafter "Defendant" or "LOOMIS"), is a Foreign Limited Liability Company with its principal place of business located at 2500 Citywest Blvd, Suite 2300, Houston, Texas, 77042.

5.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Section 1981, Title VII, the FCRA, and the MDHRO.

6.      At all times material hereto, Defendant employed Plaintiff at 1089 NW 20 St., Miami, FL, 33127 (hereinafter the "Miami location") during his employment.

7.      At all times material, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8.      At all times material, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.      At all times material, Plaintiff was a "person" within the meaning of § 760.02(6), Florida Statutes, and Defendant was an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

11.     Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action were committed within the jurisdiction of the United States District Court for the Southern District of Florida. This action is authorized and instituted pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e.

## ADMINISTRATIVE PREREQUISITES

12.     Mr. Stanley has complied with all statutory prerequisites in order to file this action.

13.     On or about April 15, 2024, Mr. Stanley timely filed a Charge of Discrimination

(Charge No. 510-2024-06320) against LOOMIS with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

14.     On or around December 16, 2024, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

15.     On or around January 20, 2025, the MDCHR issued Plaintiff's Notice of Right to Sue against Defendant.

16.     Plaintiff is timely commencing this action within ninety (90) days of receipt of each Notice of Right to Sue.

17.     Mr. Stanley is timely commencing this action more than 180 days since the filing of his charges of discrimination.

## FACTUAL ALLEGATIONS

18.     Mr. Stanley is an individual black male and is therefore a protected class member.

19.     On or around January 12, 2023, Defendant LOOMIS hired Mr. Stanley as a Driver, ATM technician, and security with full-time employment.

20.     Mr. Stanley's role predominantly entailed driving a company vehicle alongside a coworker to pick up and deliver money to clients, then drive back to the Miami location.

21.     During Mr. Stanley's employment, Defendant LOOMIS, by and through its management and employees, subjected Mr. Stanley to discriminatory conduct, including but not limited to the following: 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning unfavorable tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing

him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) wrongfully issuing Mr. Stanley write-ups, 7) wrongfully suspending Mr. Stanley, and 8) unlawfully terminating Mr. Stanley's employment, among others.

22.   At all times material hereto, Defendant LOOMIS employed Cesar Sandoval (hereinafter "Mr. Sandoval") as the Assistant Operations Manager.

23.   Mr. Sandoval maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

24.   From the onset of Mr. Stanley's employment, Mr. Sandoval was responsible for training Mr. Stanley and frequently complimented Mr. Stanley's performance.

25.   From the onset of Mr. Stanley's employment, Mr. Sandoval contributed to Defendant's hostile and discriminatory workplace by sexually harassing Mr. Stanley and his coworkers.

26.   Each and every day for the duration of Mr. Stanley's employment, Mr. Sandoval made sexually harassing remarks to Mr. Stanley and his coworkers, including but not limited to, "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up."

27.   Mr. Stanley complained to Mr. Sandoval that the sexually harassing comments were uncomfortable, and Mr. Stanley asked him to stop because he felt uncomfortable, humiliated, disgusted, and embarrassed.

28.   Mr. Stanley spoke to his coworkers about Mr. Sandoval's harassing comments, and they informed him that Mr. Sandoval made the same remarks to them, causing office-wide discomfort and tension.

29.     Despite Mr. Stanley and his coworker's discomfort and complaints, Mr. Sandoval's conduct persisted.

30.     On many occasions, Mr. Sandoval specifically told Mr. Stanley that Mr. Stanley was a sexy man, and that Mr. Sandoval would eat Mr. Stanley up for dinner. Mr. Sandoval would also send sexual messages to Defendant's employees in company-wide WhatsApp chats.

31.     To be clear, Mr. Sandoval's sexually harassing conduct endured from the onset of Mr. Stanley's employment until the day Mr. Stanley was terminated.

32.     Mr. Stanley told Mr. Sandoval that these comments were inappropriate, he was repulsed by Mr. Sandoval's conduct, and that he was confused as to why Mr. Sandoval continued to make these remarks despite Mr. Stanley's protest and discomfort.

33.     Mr. Stanley ultimately reported this behavior to Dainelyz Sanchez ("Ms. Sanchez"), employed by Defendant as Human Resources Manager.

34.     Ms. Sanchez maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

35.     Following Mr. Stanley's formal complaint of Mr. Sandoval's sexual harassment to Ms. Sanchez, Ms. Sanchez shrugged off the report and stated that Mr. Sandoval was just joking around, and she told Mr. Stanley to get over it.

36.     Mr. Stanley's coworkers saw him make this report and further saw Ms. Sanchez disregard and dismiss the complaint abruptly.

37.     Ms. Sanchez did not take any subsequent action to Mr. Stanley's direct reporting, thereby permitting and encouraging Mr. Sandoval's sexual harassment to endure.

38.     Mr. Stanley again reported Mr. Sandoval's unwelcomed and unwanted sexual harassment to Ms. Sanchez but to no avail.

39.     Mr. Sandoval continued to sexually harass Mr. Stanley throughout his entire duration of employment for Defendant despite his numerous reports made to Defendant's managers and human resources.

40.      In or around the Summer of 2023, Mr. Sandoval was replaced by a new team manager, Jesus Reyes ("Mr. Reyes").

41.     Mr. Reyes maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

42.     Mr. Sandoval was still working in the Miami location for Defendant but was no longer Mr. Stanley's direct manager.

43.     Unfortunately, Mr. Stanley's employment took a negative turn following Mr. Reyes' introduction as his manager.

44.     Mr. Reyes began discriminating against Mr. Stanley and his black coworkers because of their race and color.

45.     On or around Mr. Reyes' first day as manager, he sent Mr. Stanley home early. Mr. Stanley asked why he was being sent home but was not given an explanation.

46.     Mr. Reyes began treating Mr. Stanley and his fellow black coworkers much worse than their non-black colleagues.

47.     Once Mr. Reyes took over, Defendant's entire workplace culture shifted into an even more toxic environment, riddled with racism and unlawful discrimination.

48.     Mr. Reyes began conducting team-meetings entirely in Spanish which resulted in Mr. Stanley not being able to understand the requisite assignments and instructions. When Mr. Stanley asked Mr. Reyes if he could give him the instructions in English, Mr. Reyes told Mr. Stanley to just figure it out.

49.     Mr. Reyes then began calling Mr. Stanley and his black coworkers despicable words, including but not limited to, "*nigger,*" "*negro,*" (a Spanish word that translates to *nigger*), "*maricon,*" (a Spanish word that translates to *faggot*), "*puta*" (a Spanish word that translates to *bitch*), and "*motherfuckers*."

50.     Mr. Reyes vulgar treatment towards Mr. Stanley and his black coworkers permeated throughout Defendant's workplace, and Defendant's non-black employees began referring to Mr. Stanley and his black colleagues as "*negro,*" "*nigger,*" "*maricon,*" and "*puta.*"

51.     Defendant's unlawful and discriminatory actions, by and through Mr. Reyes, Mr. Sandoval, and its agents, caused Mr. Stanley to be embarrassed, humiliated, and devastated.

52.     Defendant, by and through its managers and agents, used the words "*negro,*" "*nigger,*" "*maricon,*" and "*puta*" each and every day.

53.     Further, almost every single day, Mr. Reyes screamed and shouted at Mr. Stanley. Mr. Reyes shouted the aforementioned profanities and disparaging remarks at Mr. Stanley in front of Defendant's employees. Mr. Stanley also saw Mr. Reyes shout the same profanities and racially disparaging remarks at Defendant's other black employees.

54.     Additionally, Mr. Stanley routinely went to Mr. Reyes to ask for additional training or help with his role, yet Mr. Reyes refused to train Mr. Stanley. Mr. Reyes regularly refused to train Mr. Stanley but provided training and assistance to Defendant's non-black employees.

55.     Further, Defendant's workplace had a general lounge area that the employees used as a breakroom for lunch or a place to rest before or after their shift ended.

56.     The employees independently formed two separate groups that sat in different areas of the lounge. The first group consisted primarily of black employees, and the second group consisted primarily of non-black employees.

57.     Mr. Reyes would frequently interrupt only the black employees' break and tell them to get back to work while allowing the non-black employees to enjoy their break.

58.     Mr. Reyes disruption of Mr. Stanley and his black coworkers' break time escalated, as Mr. Reyes even informed Mr. Stanley that he was no longer allowed to eat his lunch in the breakroom. To be clear, Mr. Reyes regularly instructed Mr. Stanley to eat lunch in his vehicle outside of the company's general lounge area.

59.     Mr. Reyes explicitly told Defendant's black employees that they were not allowed to eat lunch in the office or use the office microwave or television.

60.     Mr. Reyes also asked Mr. Stanley racially-motivated questions, such as whether Mr. Stanley owned or bought a new gun. In fact, Mr. Reyes commonly questioned his black subordinates as to whether they owned or possessed firearms. Mr. Stanley never saw Mr. Reyes ask a non-black employee if they owned a gun.

61.     Mr. Reyes continued to discriminate against Mr. Stanley and Defendant's black employees by writing them up for conduct that was conducted by all of Defendant's employees.

62.     By means of example, Mr. Reyes wrote Mr. Stanley up for working more than 40 hours, wearing clothing with Defendant's logo, and even eating lunch at work.

63.     Although none of these events violated Defendant's policies, Mr. Reyes discriminatorily disciplined Mr. Stanley for these actions. To be clear, Defendant had non-black

employees who worked more than 40 hours, wore clothing with Defendant's logo, and ate lunch at work, but Mr. Reyes did not issue them write ups for those reasons.

64.     Mr. Reyes additionally wrote Mr. Stanley up after falsely accusing him of misplacing a bag that was supposed to be transported to the Miami location. Mr. Stanley explained that the misplacement of the bag was not his fault. In fact, Mr. Stanley explained that there was video evidence to prove that Alejandro [Last Name Unknown], Mr. Stanley's non-black coworker, was responsible for the misplacement of the bag. Mr. Reyes told Mr. Stanley that even if the video exonerated Mr. Stanley and proved that Alejandro misplaced the bag, Mr. Reyes would still blame Mr. Stanley.

65.     On another occasion while Mr. Stanley was working, Mr. Stanley transported a bag of money to the Miami location but there was one single penny missing. Mr. Reyes and another manager, Alex [Last Name Unknown], immediately accused Mr. Stanley of theft and issued Mr. Stanley a write up. Upon further inquiry, the customer informed Mr. Reyes and Alex that they had miscounted and forgot to include the single penny in their total. Mr. Reyes did not withdraw Mr. Stanley's write-up or apologize for wrongfully accusing him of committing theft.

66.     Throughout the duration of Mr. Reyes' supervision of Mr. Stanley, Mr. Stanley frequently reported race discrimination to Ms. Sanchez.

67.     Mr. Stanley reported Mr. Reyes for race discrimination to Ms. Sanchez many times. Each and every time, Ms. Sanchez brushed off Mr. Stanley's complaints without questioning the validity of the report.

68.     Mr. Stanley pleaded with Ms. Sanchez to ensure race played no factor in the workplace. Mr. Stanley begged Ms. Sanchez to change the racist workplace culture so he could do his job to the best of his ability.

69.     Mr. Stanley stated to Ms. Sanchez that he was devastated by Defendant's treatment of him and his fellow black colleagues, because the black employees were treated significantly worse than non-black employees and nothing was being done to correct this.

70.     Mr. Stanley's coworkers saw that he reported race discrimination on many occasions and were shocked that nothing was done.

71.     In fact, Mr. Stanley's reports of race discrimination and sexual harassment were so well known in Defendant's workplace that his non-black coworker,[First Name Unknown] Mendoza, solely referred to Mr. Stanley as "*chivato*" (a Spanish word that translates to "*snitch*").

72.     Mr. Stanley filed many written complaints to both Mr. Reyes and Ms. Sanchez, yet no action was taken. Mr. Stanley even saw Ms. Sanchez throw away his written complaints of Defendant's unlawful discrimination and harassment.

73.     As a result of Mr. Stanley's frequent reports and complaints of discrimination, Mr. Reyes assigned him almost double the work that he previously had to perform.

74.     Mr. Stanley and his similarly-situated co-workers typically performed 25-30 stops per day, where they would drive a company truck to a client and pick up or drop off money. Following Mr. Stanley's complaints and reports, Mr. Reyes began assigning Mr. Stanley closer to 50-60 stops per day, which was not feasible. Importantly, Mr. Reyes had previously disciplined Mr. Stanley for working over 40 hours, but he now required Mr. Stanley to perform double the normal workload.

75.     In or around October of 2023, Mr. Stanley was driving the truck to deliver money alongside a non-black coworker. The two accidentally delivered money to the wrong company during their shift. Delivering money to the incorrect company was a common error for Defendant's

employees, and Defendant typically provided its employees with time to rectify the situation. However, Mr. Reyes suspended Mr. Stanley for this.

76.     However, Mr. Reyes did not discipline the other non-black driver whatsoever for his shared-responsibility of this error. Mr. Reyes did not even write up the other non-black employee, but Mr. Stanley was written up and suspended for the very same action.

77.     Mr. Stanley appealed the write-up and suspension, but no further action was taken.

78.     Mr. Stanley's black coworkers expressed their sympathy to Mr. Stanley, stating that his punishment and suspension was not warranted, and that they believed he was only being suspended because he reported race discrimination and sexual harassment.

79.     Following this suspension, Defendant terminated Mr. Stanley. Defendant informed Mr. Stanley that the reason for his termination was because Mr. Stanley did not get along with Defendant's managers and employees.

80.     Defendant's suspension and termination of Mr. Stanley came following his repeated reports of sexual harassment and racism to Defendant's HR and managers.

81.     As a result of Mr. Stanley's reporting of unlawful sexual harassment, race discrimination, and sex discrimination, Defendant, by and through its agents, suspended and wrongfully terminated Mr. Stanley in or around late October of 2023.

82.     Defendant LOOMIS unlawfully and wrongfully terminated Mr. Stanley because of his race and color, and in retaliation for his repeated complaints of unlawful conduct.

83.     The above-described conduct are just some examples of the discriminatory conduct and retaliation to which Defendant subjected Plaintiff.

84.     Defendant unlawfully discriminated against Plaintiff on the basis of his race and color and retaliated against Plaintiff for opposing Defendant's unlawful employment practices.

85.     Defendant violated Section 1981, Title VII, the FCRA, and the MDHRO by subjecting Plaintiff to a hostile work environment, disparate treatment, and retaliation.

86.     At all relevant times, Defendant's employees were acting as agents of Defendant in his discriminatory, retaliatory, and unlawful treatment of Plaintiff.

87.     At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

88.     As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

89.     As a result of the act and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

90.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

91.     Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained herein.

**CAUSES OF ACTION**
**COUNT I**
**42 U.S.C. § 1981**
**RACE AND COLOR DISCRIMINATION**

92.     Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

93.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts,

to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

94.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

95.     Mr. Stanley is a black individual, and he is therefore a protected class member.

96.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

97.     Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

98.     Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color each and every day, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

99.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

100.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

101.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

102.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

103.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

104.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

105.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT II
### 42 U.S.C. § 1981
### HOSTILE WORK ENVIRONMENT

106.     Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

107.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

108.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

109.     Mr. Stanley is a black individual, and he is therefore a protected class member.

110.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

111.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

112.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

113.     Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

114.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

115.     Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

116.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

117.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

118.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

119.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT III
### 42 U.S.C. § 1981
### RETALIATION

120.     Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

121.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

122.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

123.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

124.    Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Section 1981.

125.    Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

126.    Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

127.    Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

128.    Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

129.   After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

130.   In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

131.   There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

132.   In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

133.   Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

134.   Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

135.   Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

136.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

137.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

138.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

139.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

140.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

141.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**COUNT IV**</u>
**42 U.S.C. § 1981**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

142.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

143.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for

the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

144.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

145.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism directly to Defendant's managers and human resources.

146.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

147.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley in violation of Section 1981.

148.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

149.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

150.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

151.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

152.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Sections 1981.

153.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law

**COUNT V**
**42 U.S.C. § 2000e-2**
**RACE AND COLOR DISCRIMINATION**

154.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

155.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

156.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

157.    Mr. Stanley is a black individual, and he is therefore a protected class member.

158.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

159.     Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

160.     Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

161.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

162.     The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

163.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

164.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

165.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

166.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

167.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**42 U.S.C. § 2000e-2**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff as Against All Defendant)**

168.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

169.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

170.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

171.     Mr. Stanley is a black individual, and he is therefore a protected class member.

172.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

173.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

174.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

175.     Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

176.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

177.     Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

178.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

179.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

180.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

181.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**42 U.S.C. § 2000e-3**
**RETALIATION**

182.     Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

183.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

184.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

185.     Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Title VII.

186.     Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

187.     Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

188. Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

189. Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

190. After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

191. In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

192. There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

193. In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

194. Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

195.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

196.     Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

197.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

198.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

199.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

200.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

201.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

202.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT VIII
### 42 U.S.C. § 2000e-3
### RETALIATORY HOSTILE WORK ENVIRONMENT

203.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

204.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

205.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

206.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

207.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

208.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

209.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

210.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

211.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

212.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

213.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.10(1), Fla. Stat.**
**RACE AND COLOR DISCRIMINATION**

214.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

215.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and color. § 760.10(1)(a), Fla. Stat.

216.    Mr. Stanley is a black individual, and he is therefore a protected class member.

217.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

218.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

219.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

220.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

221.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

222.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

223.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

224.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

225.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**§ 760.10(1), Fla. Stat.**
**HOSTILE WORK ENVIRONMENT**

226.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

227.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and skin color. § 760.10(1), Fla. Stat.

228.    Mr. Stanley is a black individual, and he is therefore a protected class member.

229.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

230.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight,"

"you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

231.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

232.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

233.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

234.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

235.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

236.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XI
## § 760.10(7), Fla. Stat.
## RETALIATION

237.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

238.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

239.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

240.    Mr. Stanley engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his race and color.

241.    Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

242.    Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

243.    Defendant's actions were "materially adverse" because he were serious enough to discourage a reasonable worker from engaging in similar protected activity.

244.    Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

245.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

246.    In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

247.    There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

248.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

249.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

250.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

251.    Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

252.    Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

253.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

254.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

255.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

256.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XII
### § 760.10(7), Fla. Stat.
### RETALIATORY HOSTILE WORK ENVIRONMENT

257.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

258.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

259.     Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

260.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

261.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

262.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

263.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

264.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

265.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

266.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

267.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIII**
**§ 11A-26(1), Code of Miami-Dade County**
**RACE AND COLOR DISCRIMINATION**

268.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

269.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

270.    Mr. Stanley is a black individual, and he is therefore a protected class member.

271.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

272.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

273.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing

Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

274. Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

275. The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

276. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

277. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

278. The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

279. Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIV**
**§ 11A-26(1), Code of Miami-Dade County**
**HOSTILE WORK ENVIRONMENT**

280.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

281.     The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

282.     Mr. Stanley is a black individual, and he is therefore a protected class member.

283.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

284.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

285.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

286.     Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

287.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

288.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

289.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

290.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XV
### § 11A-43(1), Code of Miami-Dade County
### RETALIATION

291.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

292.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

293.    Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

294.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

295.    In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

296.    There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

297.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

298.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

299.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

300.     Any reasonable employee in Mr. Stanley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

301.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

302.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

303.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

304.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

305.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

<u>COUNT XVI</u>
**§ 11A-43(1), Code of Miami-Dade County**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

306.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

307.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

308.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

309.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

310.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

311.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

312.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

313.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

314.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

315.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

316.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury as to all issues.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including emotional distress damages, punitive damages, liquidated damages, statutory damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981, Title VII, and the FCRA.

Dated: Miami, Florida
March 10, 2025

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com