## RETURN OF SERVICE

### UNITED STATES DISTRICT COURT
### District of Florida

Case Number: 1:25-CV-21113-JAL

Plaintiff:
**WILLIE STANLEY**

vs.

Defendant:
**LOOMIS ARMORED US, LLC**

For:
Daniel Barroukh
Derek Smith Law Group

Received by DLE Process Servers, Inc on the 14th day of March, 2025 at 1:28 pm to be served on **Loomis Armored US, LLC c/o R/A: CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324**.

I, Carlos Vila Escobar, do hereby affirm that on the **17th day of March, 2025** at **1:15 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summon in a Civil Action, Complaint, Civil Cover Sheet** at **1200 S. Pine Island Road, Plantation, FL 33324** with the date and hour of service endorsed thereon by me, to: **Donna Moch** as **SOP** for **Ct Corporation System, REGISTERED AGENT** on behalf of **Loomis Armored US, LLC** and informing said person of the contents therein, in compliance state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server, in good standing, in the judicial circuit in which the process was served.

Under penalties of perjury, I declare that I have read the foregoing Verified Return of Service and that the facts stated are true. F.S. 92.525.  NOTARY NOT REQUIRED PURSUANT TO F.S. 92.525

_____
**Carlos Vila Escobar**
SPS 1683

**DLE Process Servers, Inc**
**936 Sw 1st Avenue**
**#261**
**Miami, FL 33130**
**(786) 220-9705**

Our Job Serial Number: DLE-2025014569

Copyright © 1992-2025 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

| SERVER | CV |
|---|---|
| LICENSE | SPS 1683 |

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| WILLIE STANLEY | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )  Civil Action No. 1:25-cv-21113-JAL |
| LOOMIS ARMORED US, LLC | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  LOOMIS ARMORED US, LLC
c/o C T Corporation System, its Registered Agent
1200 South Pine Island Road
Plantation, FL 33424

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Daniel J. Barroukh, Esq.
c/o Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**SUMMONS**

Date:  03/10/2025

_s/ Clifford Charles_
Deputy Clerk
U.S. District Courts

Angela E. Noble
Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WILLIE STANLEY,

                 Plaintiff,                                    CASE NO.:

     v.                                      JURY TRIAL DEMANDED

LOOMIS ARMORED US, LLC,

                 Defendant.

_____/

## COMPLAINT

Plaintiff, WILLIE STANLEY ("Plaintiff" and/or "Mr. Stanley"), by and through his undersigned counsel, hereby complains of Defendant, LOOMIS ARMORED US, LLC ("Defendant" and/or "LOOMIS) and alleges as follows:

## INTRODUCTION

1.     This case involves an individual black man who was unlawfully discriminated against and retaliated against by his employer on the basis of his race and color.

2.     Plaintiff seeks monetary relief to redress the Defendant's unlawful employment practices in violation of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes *et seq.* ("FCRA"), and the Miami-Dade Human Rights Ordinance 97-17, Article IV, Chapter 11A, *et seq.* ("MDHRO"). Additionally, this action seeks to redress Defendant's deprivation of Plaintiff's personal dignity and his right to pursue equal employment opportunities.

## PARTIES

3.     Plaintiff is an individual Black male, a resident of Miami-Dade County, Florida, over the age of eighteen years, and otherwise *sui juris.*

1

4.      Defendant, LOOMIS ARMORED US, LLC, (hereinafter "Defendant" or "LOOMIS"), is a Foreign Limited Liability Company with its principal place of business located at 2500 Citywest Blvd, Suite 2300, Houston, Texas, 77042.

5.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Section 1981, Title VII, the FCRA, and the MDHRO.

6.      At all times material hereto, Defendant employed Plaintiff at 1089 NW 20 St., Miami, FL, 33127 (hereinafter the "Miami location") during his employment.

7.      At all times material, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8.      At all times material, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.      At all times material, Plaintiff was a "person" within the meaning of § 760.02(6), Florida Statutes, and Defendant was an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

11.     Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action were committed within the jurisdiction of the United States District Court for the Southern District of Florida. This action is authorized and instituted pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e.

## ADMINISTRATIVE PREREQUISITES

12.     Mr. Stanley has complied with all statutory prerequisites in order to file this action.

13.     On or about April 15, 2024, Mr. Stanley timely filed a Charge of Discrimination

2

(Charge No. 510-2024-06320) against LOOMIS with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

14.     On or around December 16, 2024, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

15.     On or around January 20, 2025, the MDCHR issued Plaintiff's Notice of Right to Sue against Defendant.

16.     Plaintiff is timely commencing this action within ninety (90) days of receipt of each Notice of Right to Sue.

17.     Mr. Stanley is timely commencing this action more than 180 days since the filing of his charges of discrimination.

## FACTUAL ALLEGATIONS

18.     Mr. Stanley is an individual black male and is therefore a protected class member.

19.     On or around January 12, 2023, Defendant LOOMIS hired Mr. Stanley as a Driver, ATM technician, and security with full-time employment.

20.     Mr. Stanley's role predominantly entailed driving a company vehicle alongside a coworker to pick up and deliver money to clients, then drive back to the Miami location.

21.     During Mr. Stanley's employment, Defendant LOOMIS, by and through its management and employees, subjected Mr. Stanley to discriminatory conduct, including but not limited to the following: 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning unfavorable tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing

him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) wrongfully issuing Mr. Stanley write-ups, 7) wrongfully suspending Mr. Stanley, and 8) unlawfully terminating Mr. Stanley's employment, among others.

22.     At all times material hereto, Defendant LOOMIS employed Cesar Sandoval (hereinafter "Mr. Sandoval") as the Assistant Operations Manager.

23.     Mr. Sandoval maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

24.     From the onset of Mr. Stanley's employment, Mr. Sandoval was responsible for training Mr. Stanley and frequently complimented Mr. Stanley's performance.

25.     From the onset of Mr. Stanley's employment, Mr. Sandoval contributed to Defendant's hostile and discriminatory workplace by sexually harassing Mr. Stanley and his coworkers.

26.     Each and every day for the duration of Mr. Stanley's employment, Mr. Sandoval made sexually harassing remarks to Mr. Stanley and his coworkers, including but not limited to, "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up."

27.     Mr. Stanley complained to Mr. Sandoval that the sexually harassing comments were uncomfortable, and Mr. Stanley asked him to stop because he felt uncomfortable, humiliated, disgusted, and embarrassed.

28.     Mr. Stanley spoke to his coworkers about Mr. Sandoval's harassing comments, and they informed him that Mr. Sandoval made the same remarks to them, causing office-wide discomfort and tension.

4

29.     Despite Mr. Stanley and his coworker's discomfort and complaints, Mr. Sandoval's conduct persisted.

30.     On many occasions, Mr. Sandoval specifically told Mr. Stanley that Mr. Stanley was a sexy man, and that Mr. Sandoval would eat Mr. Stanley up for dinner. Mr. Sandoval would also send sexual messages to Defendant's employees in company-wide WhatsApp chats.

31.     To be clear, Mr. Sandoval's sexually harassing conduct endured from the onset of Mr. Stanley's employment until the day Mr. Stanley was terminated.

32.     Mr. Stanley told Mr. Sandoval that these comments were inappropriate, he was repulsed by Mr. Sandoval's conduct, and that he was confused as to why Mr. Sandoval continued to make these remarks despite Mr. Stanley's protest and discomfort.

33.     Mr. Stanley ultimately reported this behavior to Dainelyz Sanchez ("Ms. Sanchez"), employed by Defendant as Human Resources Manager.

34.     Ms. Sanchez maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

35.     Following Mr. Stanley's formal complaint of Mr. Sandoval's sexual harassment to Ms. Sanchez, Ms. Sanchez shrugged off the report and stated that Mr. Sandoval was just joking around, and she told Mr. Stanley to get over it.

36.     Mr. Stanley's coworkers saw him make this report and further saw Ms. Sanchez disregard and dismiss the complaint abruptly.

37.     Ms. Sanchez did not take any subsequent action to Mr. Stanley's direct reporting, thereby permitting and encouraging Mr. Sandoval's sexual harassment to endure.

5

38.     Mr. Stanley again reported Mr. Sandoval's unwelcomed and unwanted sexual harassment to Ms. Sanchez but to no avail.

39.     Mr. Sandoval continued to sexually harass Mr. Stanley throughout his entire duration of employment for Defendant despite his numerous reports made to Defendant's managers and human resources.

40.     In or around the Summer of 2023, Mr. Sandoval was replaced by a new team manager, Jesus Reyes ("Mr. Reyes").

41.     Mr. Reyes maintained the ability to modify Mr. Stanley's employment, including but not limited to changing Mr. Stanley's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Stanley.

42.     Mr. Sandoval was still working in the Miami location for Defendant but was no longer Mr. Stanley's direct manager.

43.     Unfortunately, Mr. Stanley's employment took a negative turn following Mr. Reyes' introduction as his manager.

44.     Mr. Reyes began discriminating against Mr. Stanley and his black coworkers because of their race and color.

45.     On or around Mr. Reyes' first day as manager, he sent Mr. Stanley home early. Mr. Stanley asked why he was being sent home but was not given an explanation.

46.     Mr. Reyes began treating Mr. Stanley and his fellow black coworkers much worse than their non-black colleagues.

47.     Once Mr. Reyes took over, Defendant's entire workplace culture shifted into an even more toxic environment, riddled with racism and unlawful discrimination.

48.     Mr. Reyes began conducting team-meetings entirely in Spanish which resulted in Mr. Stanley not being able to understand the requisite assignments and instructions. When Mr. Stanley asked Mr. Reyes if he could give him the instructions in English, Mr. Reyes told Mr. Stanley to just figure it out.

49.     Mr. Reyes then began calling Mr. Stanley and his black coworkers despicable words, including but not limited to, "*nigger,*" "*negro,*" (a Spanish word that translates to *nigger*), "*maricon,*" (a Spanish word that translates to *faggot*), "*puta*" (a Spanish word that translates to *bitch*), and "*motherfuckers.*"

50.     Mr. Reyes vulgar treatment towards Mr. Stanley and his black coworkers permeated throughout Defendant's workplace, and Defendant's non-black employees began referring to Mr. Stanley and his black colleagues as "*negro,*" "*nigger,*" "*maricon,*" and "*puta.*"

51.     Defendant's unlawful and discriminatory actions, by and through Mr. Reyes, Mr. Sandoval, and its agents, caused Mr. Stanley to be embarrassed, humiliated, and devastated.

52.     Defendant, by and through its managers and agents, used the words "*negro,*" "*nigger,*" "*maricon,*" and "*puta*" each and every day.

53.     Further, almost every single day, Mr. Reyes screamed and shouted at Mr. Stanley. Mr. Reyes shouted the aforementioned profanities and disparaging remarks at Mr. Stanley in front of Defendant's employees. Mr. Stanley also saw Mr. Reyes shout the same profanities and racially disparaging remarks at Defendant's other black employees.

54.     Additionally, Mr. Stanley routinely went to Mr. Reyes to ask for additional training or help with his role, yet Mr. Reyes refused to train Mr. Stanley. Mr. Reyes regularly refused to train Mr. Stanley but provided training and assistance to Defendant's non-black employees.

55.     Further, Defendant's workplace had a general lounge area that the employees used as a breakroom for lunch or a place to rest before or after their shift ended.

56.     The employees independently formed two separate groups that sat in different areas of the lounge. The first group consisted primarily of black employees, and the second group consisted primarily of non-black employees.

57.     Mr. Reyes would frequently interrupt only the black employees' break and tell them to get back to work while allowing the non-black employees to enjoy their break.

58.     Mr. Reyes disruption of Mr. Stanley and his black coworkers' break time escalated, as Mr. Reyes even informed Mr. Stanley that he was no longer allowed to eat his lunch in the breakroom. To be clear, Mr. Reyes regularly instructed Mr. Stanley to eat lunch in his vehicle outside of the company's general lounge area.

59.     Mr. Reyes explicitly told Defendant's black employees that they were not allowed to eat lunch in the office or use the office microwave or television.

60.     Mr. Reyes also asked Mr. Stanley racially-motivated questions, such as whether Mr. Stanley owned or bought a new gun. In fact, Mr. Reyes commonly questioned his black subordinates as to whether they owned or possessed firearms. Mr. Stanley never saw Mr. Reyes ask a non-black employee if they owned a gun.

61.     Mr. Reyes continued to discriminate against Mr. Stanley and Defendant's black employees by writing them up for conduct that was conducted by all of Defendant's employees.

62.     By means of example, Mr. Reyes wrote Mr. Stanley up for working more than 40 hours, wearing clothing with Defendant's logo, and even eating lunch at work.

63.     Although none of these events violated Defendant's policies, Mr. Reyes discriminatorily disciplined Mr. Stanley for these actions. To be clear, Defendant had non-black

employees who worked more than 40 hours, wore clothing with Defendant's logo, and ate lunch at work, but Mr. Reyes did not issue them write ups for those reasons.

64.     Mr. Reyes additionally wrote Mr. Stanley up after falsely accusing him of misplacing a bag that was supposed to be transported to the Miami location. Mr. Stanley explained that the misplacement of the bag was not his fault. In fact, Mr. Stanley explained that there was video evidence to prove that Alejandro [Last Name Unknown], Mr. Stanley's non-black coworker, was responsible for the misplacement of the bag. Mr. Reyes told Mr. Stanley that even if the video exonerated Mr. Stanley and proved that Alejandro misplaced the bag, Mr. Reyes would still blame Mr. Stanley.

65.     On another occasion while Mr. Stanley was working, Mr. Stanley transported a bag of money to the Miami location but there was one single penny missing. Mr. Reyes and another manager, Alex [Last Name Unknown], immediately accused Mr. Stanley of theft and issued Mr. Stanley a write up. Upon further inquiry, the customer informed Mr. Reyes and Alex that they had miscounted and forgot to include the single penny in their total. Mr. Reyes did not withdraw Mr. Stanley's write-up or apologize for wrongfully accusing him of committing theft.

66.     Throughout the duration of Mr. Reyes' supervision of Mr. Stanley, Mr. Stanley frequently reported race discrimination to Ms. Sanchez.

67.     Mr. Stanley reported Mr. Reyes for race discrimination to Ms. Sanchez many times. Each and every time, Ms. Sanchez brushed off Mr. Stanley's complaints without questioning the validity of the report.

68.     Mr. Stanley pleaded with Ms. Sanchez to ensure race played no factor in the workplace. Mr. Stanley begged Ms. Sanchez to change the racist workplace culture so he could do his job to the best of his ability.

69.     Mr. Stanley stated to Ms. Sanchez that he was devastated by Defendant's treatment of him and his fellow black colleagues, because the black employees were treated significantly worse than non-black employees and nothing was being done to correct this.

70.     Mr. Stanley's coworkers saw that he reported race discrimination on many occasions and were shocked that nothing was done.

71.     In fact, Mr. Stanley's reports of race discrimination and sexual harassment were so well known in Defendant's workplace that his non-black coworker,[First Name Unknown] Mendoza, solely referred to Mr. Stanley as "*chivato*" (a Spanish word that translates to "*snitch*").

72.     Mr. Stanley filed many written complaints to both Mr. Reyes and Ms. Sanchez, yet no action was taken. Mr. Stanley even saw Ms. Sanchez throw away his written complaints of Defendant's unlawful discrimination and harassment.

73.     As a result of Mr. Stanley's frequent reports and complaints of discrimination, Mr. Reyes assigned him almost double the work that he previously had to perform.

74.     Mr. Stanley and his similarly-situated co-workers typically performed 25-30 stops per day, where they would drive a company truck to a client and pick up or drop off money. Following Mr. Stanley's complaints and reports, Mr. Reyes began assigning Mr. Stanley closer to 50-60 stops per day, which was not feasible. Importantly, Mr. Reyes had previously disciplined Mr. Stanley for working over 40 hours, but he now required Mr. Stanley to perform double the normal workload.

75.     In or around October of 2023, Mr. Stanley was driving the truck to deliver money alongside a non-black coworker. The two accidentally delivered money to the wrong company during their shift. Delivering money to the incorrect company was a common error for Defendant's

employees, and Defendant typically provided its employees with time to rectify the situation. However, Mr. Reyes suspended Mr. Stanley for this.

76.     However, Mr. Reyes did not discipline the other non-black driver whatsoever for his shared-responsibility of this error. Mr. Reyes did not even write up the other non-black employee, but Mr. Stanley was written up and suspended for the very same action.

77.     Mr. Stanley appealed the write-up and suspension, but no further action was taken.

78.     Mr. Stanley's black coworkers expressed their sympathy to Mr. Stanley, stating that his punishment and suspension was not warranted, and that they believed he was only being suspended because he reported race discrimination and sexual harassment.

79.     Following this suspension, Defendant terminated Mr. Stanley. Defendant informed Mr. Stanley that the reason for his termination was because Mr. Stanley did not get along with Defendant's managers and employees.

80.     Defendant's suspension and termination of Mr. Stanley came following his repeated reports of sexual harassment and racism to Defendant's HR and managers.

81.     As a result of Mr. Stanley's reporting of unlawful sexual harassment, race discrimination, and sex discrimination, Defendant, by and through its agents, suspended and wrongfully terminated Mr. Stanley in or around late October of 2023.

82.     Defendant LOOMIS unlawfully and wrongfully terminated Mr. Stanley because of his race and color, and in retaliation for his repeated complaints of unlawful conduct.

83.     The above-described conduct are just some examples of the discriminatory conduct and retaliation to which Defendant subjected Plaintiff.

84.     Defendant unlawfully discriminated against Plaintiff on the basis of his race and color and retaliated against Plaintiff for opposing Defendant's unlawful employment practices.

85.     Defendant violated Section 1981, Title VII, the FCRA, and the MDHRO by subjecting Plaintiff to a hostile work environment, disparate treatment, and retaliation.

86.     At all relevant times, Defendant's employees were acting as agents of Defendant in his discriminatory, retaliatory, and unlawful treatment of Plaintiff.

87.     At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

88.     As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

89.     As a result of the act and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

90.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

91.     Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained herein.

## CAUSES OF ACTION
### COUNT I
### 42 U.S.C. § 1981
### RACE AND COLOR DISCRIMINATION

92.     Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

93.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts,

to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

94.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

95.     Mr. Stanley is a black individual, and he is therefore a protected class member.

96.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

97.     Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

98.     Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color each and every day, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

13

99.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

100.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

101.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

102.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

103.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

104.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

105.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT II
### 42 U.S.C. § 1981
### HOSTILE WORK ENVIRONMENT

106.   Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

107.   Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

108.   Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

109.   Mr. Stanley is a black individual, and he is therefore a protected class member.

110.   The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

111.   Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

15

112.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

113.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

114.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

115.    Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

116.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

117.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

118.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

119.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

### COUNT III
### 42 U.S.C. § 1981
### RETALIATION

120.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

121.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

122.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

123.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

124.     Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Section 1981.

125.     Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

126.     Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

127.     Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

128.     Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

129.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

130.     In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

131.     There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

132.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

133.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

134.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

135.     Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

136.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

137.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

138.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

139.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

140.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

141.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 1981**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

142.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

143.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for

19

the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

144.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

145.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism directly to Defendant's managers and human resources.

146.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

147.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley in violation of Section 1981.

148.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

149.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

150.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

151.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

152.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Sections 1981.

153.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law

## COUNT V
### 42 U.S.C. § 2000e-2
### RACE AND COLOR DISCRIMINATION

154.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

155.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

156.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

157.    Mr. Stanley is a black individual, and he is therefore a protected class member.

21

158.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

159.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

160.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

161.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

162.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

163.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

164.   Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

165.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

166.   Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

167.   Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**42 U.S.C. § 2000e-2**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff as Against All Defendant)**

168.   Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

169.   Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

170.   Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

23

171.   Mr. Stanley is a black individual, and he is therefore a protected class member.

172.   The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

173.   Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

174.   Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

175.   Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

176.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

177.   Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

178.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

179.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

180.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

181.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**42 U.S.C. § 2000e-3**
**RETALIATION**

182.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

183.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

184.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

185.    Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Title VII.

186.    Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

187.    Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

188.  Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

189.  Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

190.  After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

191.  In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

192.  There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

193.  In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

194.  Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

195.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

196.    Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

197.    Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

198.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

199.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

200.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

201.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

202.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

<u>COUNT VIII</u>
**42 U.S.C. § 2000e-3**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

203.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

204.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

205.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

206.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

207.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

208.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

209.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

210.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

211.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

212.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

213.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.10(1), Fla. Stat.**
**RACE AND COLOR DISCRIMINATION**

214.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

215.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and color. § 760.10(1)(a), Fla. Stat.

216.    Mr. Stanley is a black individual, and he is therefore a protected class member.

217.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

218.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

219.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

220.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

221.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the FCRA. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

222.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

223. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

224. The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

225. Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**§ 760.10(1), Fla. Stat.**
**HOSTILE WORK ENVIRONMENT**

226. Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

227. The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and skin color. § 760.10(1), Fla. Stat.

228. Mr. Stanley is a black individual, and he is therefore a protected class member.

229. The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

230. Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight,"

31

"you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

231.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

232.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

233.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

234.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

235.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

236.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XI
### § 760.10(7), Fla. Stat.
### RETALIATION

237.    Mr. Stanley reincorporates the factual allegations in Paragraphs 18 through 91.

238.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

239.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

240.    Mr. Stanley engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his race and color.

241.    Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

242.    Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

243.    Defendant's actions were "materially adverse" because he were serious enough to discourage a reasonable worker from engaging in similar protected activity.

244.    Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

245.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

246.     In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

247.     There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

248.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

249.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

250.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

251.     Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

252.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

34

253.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

254.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

255.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

256.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XII**
**§ 760.10(7), Fla. Stat.**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

257.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

258.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

259.     Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

260.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

261.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

262.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

263.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

264.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

265.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

266.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

267.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XIII
### § 11A-26(1), Code of Miami-Dade County
### RACE AND COLOR DISCRIMINATION

268.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

269.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

270.    Mr. Stanley is a black individual, and he is therefore a protected class member.

271.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

272.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

273.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing

37

Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

274.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

275.     The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

276.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

277.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

278.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

279.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XIV
### § 11A-26(1), Code of Miami-Dade County
### HOSTILE WORK ENVIRONMENT

280.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

281.    The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

282.    Mr. Stanley is a black individual, and he is therefore a protected class member.

283.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

284.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

285.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

286.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

287.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

288.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

289.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

290.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XV
### § 11A-43(1), Code of Miami-Dade County
### RETALIATION

291.    Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

292.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

293.   Mr. Stanley engaged in protected activity by repeatedly reporting Mr. Reyes and Mr. Sandoval's unlawful discriminatory behavior and comments to Ms. Sanchez during his employment.

294.   After many unsuccessful reports and complaints of discrimination and unlawful activity to Ms. Sanchez, Mr. Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

295.   In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Mr. Reyes' discriminatory behavior to Ms. Sanchez. Mr. Stanley explained that Mr. Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

296.   There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

297.   In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

298.   Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

299.   Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

300.     Any reasonable employee in Mr. Stanley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

301.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

302.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

303.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

304.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

305.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**COUNT XVI**</u>
**§ 11A-43(1), Code of Miami-Dade County**
**RETALIATORY HOSTILE WORK ENVIRONMENT**

306.     Mr. Stanley reincorporates the factual allegations in paragraphs 18 through 91.

307.   The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

308.   Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

309.   Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

310.   In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

311.   Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Mr. Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

312.   The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

313.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

314.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

315.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

316.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including emotional distress damages, punitive damages, liquidated damages, statutory damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981, Title VII, and the FCRA.

Dated: Miami, Florida
March 10, 2025

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

JS 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WILLIE STANLEY

**DEFENDANTS**
LOOMIS ARMORED US, LLC

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade County, Fla.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel J. Barroukh, Esq., Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301, Miami, FL 33131
Tel. (305) 946-1884

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981 et seq. and 42 U.S.C. § 2000e
Brief description of cause:
Civil suit for employment discrimination and retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/10/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Daniel Jordan Barroukh

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
  Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.