## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WILLIE STANLEY, LEONATRAE                    CASE NO.: 1:25-cv-21113-JAL
EDWARDS, and JAJUAN SMITH,                   JURY TRIAL DEMANDED

          Plaintiffs,

v.

LOOMIS ARMORED US, LLC,

          Defendant.

_____/

### AMENDED COMPLAINT

Plaintiffs, WILLIE STANLEY ("Plaintiff Stanley" and/or "Mr. Stanley"), LEONATRAE

EDWARDS ("Plaintiff Edwards" and/or "Mr. Edwards"), and JAJUAN SMITH ("Plaintiff Smith"

and/or "Mr. Smith") (collectively herein referred to as "Plaintiffs"), by and through their

undersigned counsel, hereby complain of Defendant, LOOMIS ARMORED US, LLC

("Defendant" and/or "LOOMIS) and allege as follows:

### INTRODUCTION

1.      This case involves three black men who were unlawfully discriminated against and

retaliated against by their employer on the basis of their race and color.

2.      Plaintiffs seek monetary relief to redress the Defendant's unlawful employment

practices in violation of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Florida Civil Rights Act of 1992, § 760.01,

Florida Statutes *et seq.* ("FCRA"), and the Miami-Dade Human Rights Ordinance 97-17, Article

IV, Chapter 11A, *et seq.* ("MDHRO"). Additionally, this action seeks to redress Defendant's

deprivation of Plaintiffs' personal dignity and their right to pursue equal employment opportunities.

## PARTIES

3.      Plaintiff Stanley is an individual Black male, a resident of Miami-Dade County, Florida, over the age of eighteen years, and otherwise *sui juris*.

4.      Plaintiff Edwards is an individual Black male, a resident of Miami-Dade County, Florida, over the age of eighteen years, and otherwise *sui juris*.

5.      Plaintiff Smith is an individual Black male, a resident of Miami-Dade County, Florida, over the age of eighteen years, and otherwise *sui juris*.

6.      Defendant, LOOMIS ARMORED US, LLC, is a Foreign Limited Liability Company with its principal place of business located at 2500 Citywest Blvd, Suite 2300, Houston, Texas, 77042.

7.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Section 1981, Title VII, the FCRA, and the MDHRO.

8.      At all times material hereto, Defendant employed Plaintiffs at 1089 NW 20 St., Miami, FL, 33127 (hereinafter the "Miami location") during his employment.

9.      At all times material, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

10.     At all times material, Plaintiff Stanley was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

11.     At all times material, Plaintiff Edwards was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

12.     At all times material, Plaintiff Smith was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

13.     At all times material, Plaintiffs were each a "person" within the meaning of § 760.02(6), Florida Statutes, and Defendant was an "employer" within the meaning of § 760.02(7), Florida Statutes.

<u>**JURISDICTION AND VENUE**</u>

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

15.     Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action were committed within the jurisdiction of the United States District Court for the Southern District of Florida. This action is authorized and instituted pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e.

<u>**ADMINISTRATIVE PREREQUISITES**</u>

16.     Plaintiffs have complied with all statutory prerequisites in order to file this action.

17.     On or about April 15, 2024, Mr. Stanley timely filed a Charge of Discrimination (Charge No. 510-2024-06320) against LOOMIS with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

18.     On or around December 16, 2024, the EEOC issued Plaintiff Stanley's Notice of Right to Sue against Defendant.

19.     On or around January 20, 2025, the MDCHR issued Plaintiff Stanley's Notice of Right to Sue against Defendant.

20.     On or around April 1, 2025, the EEOC issued Plaintiff Edwards' Notice of Right to Sue against Defendant.

21.     On or around April 1, 2025, the EEOC issued Plaintiff Smith's Notice of Right to

Sue against Defendant

22.     Plaintiffs are timely commencing this action within ninety (90) days of receipt of each of their respective Notices of Right to Sue.

23.     Mr. Stanley is timely commencing this action more than 180 days since the filing of his charge of discrimination.

## FACTUAL ALLEGATIONS

24.     Mr. Stanley is an individual black male and is therefore a protected class member.

25.     Mr. Edwards is an individual black male and is therefore a protected class member.

26.     Mr. Smith is an individual black male and is therefore a protected class member.

27.     In or around April of 2021, Defendant hired Mr. Edwards to the Messenger position, where he assisted in securely transporting money from one location to another as well as loading and unloading shipments at the designated locations.

28.     In or around July of 2022, Defendant hired Mr. Smith as a Driver, ATM technician, and security with full-time employment.

29.     On or around January 12, 2023, Defendant hired Mr. Stanley as a Driver, ATM technician, and security with full-time employment.

30.     Mr. Stanley and Mr. Smith's role predominantly entailed driving a company vehicle alongside a coworker to pick up and deliver money to clients, then drive back to the Miami location to unload the money.

31.     During Plaintiffs' employment, Defendant, by and through its management and employees, subjected Plaintiffs to discriminatory conduct, including but not limited to the following: 1) subjecting Plaintiffs to discriminatory comments regarding their race and color, including but not limited to the words "*nigger*," and "*negro*", 2) subjecting Plaintiffs to insulting

4

and disgusting comments, including but not limited to the words "*puta*" (the Spanish equivalent of "bitch"), "*maricon*" (the Spanish equivalent of "faggot"), and *motherfuckers,*" 3) failing to train Plaintiffs for their position, 4) assigning unfavorable tasks to Plaintiffs compared to his non-Black coworkers, 5) refusing Plaintiffs access to the lunch room during their lunch breaks and forcing them to eat in their vehicle, 6) denying Plaintiffs the same employment privileges afforded to their non-Black co-workers, 7) wrongfully issuing Plaintiffs write-ups, 8) wrongfully suspending Mr. Stanley and Mr. Smith, and 9) unlawfully terminating Plaintiffs' employment, among others.

32.     At all times material hereto, Defendant employed Cesar Sandoval (hereinafter "Sandoval") as the Assistant Operations Manager.

33.     Sandoval maintained the ability to modify Plaintiffs' employment, including but not limited to changing Plaintiffs' hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Plaintiffs.

34.     From the onset of Plaintiffs' employment, Sandoval was responsible for training Plaintiffs' and frequently complimented Plaintiffs' performance.

35.     From the onset of Plaintiffs' employment, Sandoval contributed to Defendant's hostile and discriminatory workplace by sexually harassing Plaintiffs' and their coworkers.

36.     Each and every day for the duration of Plaintiffs' employment, Sandoval made sexually harassing remarks to Plaintiffs and their coworkers, including but not limited to, "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up."

37.     On one occasion, Mr. Smith was being finger-printed to obtain additional security clearances. When Mr. Smith was scanning his fingers, Sandoval walked over and said, "let me finger you."

38.     Mr. Smith was disgusted by this comment, and told Sandoval that he felt uncomfortable and asked for the sexually harassing comments to stop.

39.     Mr. Stanley also complained to Sandoval that the sexually harassing comments were uncomfortable, and Mr. Stanley asked him to stop because he felt uncomfortable, humiliated, disgusted, and embarrassed.

40.     Plaintiffs spoke to each other and their coworkers about Sandoval's harassing comments, and they realized that Sandoval made the same remarks to them, causing office-wide discomfort and tension.

41.     Despite Plaintiffs' discomfort and complaints, Sandoval's conduct persisted.

42.     On many occasions, Sandoval specifically told Mr. Stanley that Mr. Stanley was a sexy man, and that Sandoval would eat Mr. Stanley up for dinner. Sandoval would also send sexual messages to Defendant's employees in company-wide WhatsApp chats.

43.     To be clear, Sandoval's sexually harassing conduct endured from the onset of Plaintiffs' employment until the day Plaintiffs' were terminated.

44.     Mr. Stanley told Sandoval that these comments were inappropriate, he was repulsed by Sandoval's conduct, and that he was confused as to why Sandoval continued to make these remarks despite Mr. Stanley's protest and discomfort.

45.     Mr. Stanley ultimately reported this behavior to Dainelyz Sanchez ("Sanchez"), employed by Defendant as Human Resources Manager.

46.     Sanchez maintained the ability to modify Plaintiffs' employment, including but not limited to changing Plaintiffs' hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Plaintiffs'.

47.     Following Mr. Stanley's formal complaint of Sandoval's sexual harassment to Sanchez, Sanchez shrugged off the report and stated that Sandoval was just joking around, and she told Mr. Stanley to get over it.

48.     Mr. Edwards and Mr. Smith saw Mr. Stanley make this report of sexual harassment to Sanchez and further saw Sanchez disregard and dismiss the complaint abruptly.

49.     Sanchez did not take any subsequent action to Mr. Stanley's direct reporting, thereby permitting and encouraging Sandoval's sexual harassment to endure.

50.     Mr. Stanley again reported Sandoval's unwelcomed and unwanted sexual harassment to Sanchez but to no avail.

51.     Sandoval continued to sexually harass Plaintiffs throughout their entire duration of employment for Defendant despite his numerous reports made to Defendant's managers and human resources.

52.      In or around the Summer of 2023, Sandoval was replaced by a new team manager, Jesus Reyes ("Reyes").

53.     Reyes maintained the ability to modify Plaintiffs' employment, including but not limited to changing Plaintiffs' hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Plaintiffs'.

54.     Sandoval was still working in the Miami location for Defendant but was no longer Plaintiffs' direct manager.

55.     Unfortunately, Plaintiffs' employment took a negative turn following Reyes' introduction as his manager.

56.     Reyes began discriminating against Plaintiffs and their black coworkers because of their race and color.

57.     On or around Reyes' first day as manager, he sent Mr. Stanley home early. Mr. Stanley asked why he was being sent home but was not given an explanation.

58.     Reyes began treating Plaintiffs and their fellow black coworkers much worse than their non-black colleagues.

59.     Once Reyes took over, Defendant's entire workplace culture shifted into an even more toxic environment, riddled with racism, unlawful discrimination, and segregation.

60.     Reyes began conducting team-meetings entirely in Spanish which resulted in Plaintiffs not being able to understand the requisite assignments and instructions. When Plaintiffs asked Reyes if he could give them the instructions in English, Reyes told Plaintiffs to just figure it out.

61.     Reyes then began calling Plaintiffs and his black coworkers despicable words, including but not limited to, "*nigger,*" "*negro,*" (a Spanish word that translates to *nigger*), "*maricon,*" (a Spanish word that translates to *faggot*), "*puta*" (a Spanish word that translates to *bitch*), and "*motherfuckers.*"

62.     Reyes vulgar treatment towards Plaintiffs and their black coworkers permeated throughout Defendant's workplace, and Defendant's non-black employees began referring to Plaintiffs and their black colleagues as "*negro,*" "*nigger,*" "*maricon,*" and "*puta.*"

63.     Defendant's unlawful and discriminatory actions, by and through Reyes, Sandoval, and its agents, caused Plaintiffs to be embarrassed, humiliated, and devastated.

64.     Defendant, by and through its managers and agents, directed the words "*negro,*" "*nigger,*" "*maricon,*" and "*puta*" towards Plaintiffs multiple times each and every day.

65.     Further, almost every single day, Reyes screamed and shouted at Plaintiffs. Reyes shouted the aforementioned profanities and disparaging remarks at Plaintiffs in front of

Defendant's employees. Plaintiffs also saw Reyes shout the same profanities and racially disparaging remarks at Defendant's other black employees.

66.     Additionally, Mr. Stanley routinely went to Reyes to ask for additional training or help with his role, yet Reyes refused to train Mr. Stanley. Reyes regularly refused to train Mr. Stanley but provided training and assistance to Defendant's non-black employees.

67.     As Mr. Edwards and Mr. Smith were employed by Defendant for a longer period, they offered their assistance to Mr. Stanley when possible because they saw Reyes refuse to train Mr. Stanley.

68.     Further, Defendant's workplace had a general lounge area that the employees used as a breakroom for lunch or a place to rest before or after their shift ended.

69.     The employees independently formed two separate groups that sat in different areas of the lounge. The first group consisted primarily of black employees, and the second group consisted primarily of non-black employees.

70.     Reyes would frequently interrupt only the black employees' break and tell them to get back to work while allowing the non-black employees to enjoy their break.

71.     Reyes disruption of Plaintiffs and their black coworkers' break time escalated, as Reyes even informed Plaintiffs that they was no longer allowed to eat their lunch in the breakroom. To be clear, Reyes regularly instructed Plaintiffs to eat lunch in their vehicles outside of the company's general lounge area.

72.     Reyes would shout at Plaintiffs to leave, yelling "*Dale! Dale! Dale!*" (a Spanish word that translates to *Go!*)

73.     Reyes explicitly told Defendant's black employees that they were not allowed to eat lunch in the office, use the office microwave, or watch television in the company space afforded to all employees.

74.     Reyes also asked Plaintiffs racially-motivated questions, such as whether Mr. Stanley owned or bought a new gun. In fact, Reyes commonly questioned his black subordinates as to whether they owned or possessed firearms. Plaintiffs never saw Reyes ask a non-black employee if they owned a gun.

75.     Reyes continued to discriminate against Plaintiffs and Defendant's black employees by writing them up for conduct that was conducted by all of Defendant's employees.

76.     By means of example, Reyes wrote Mr. Stanley up for working more than 40 hours, wearing clothing with Defendant's logo, and eating lunch at work.

77.     Although none of these events violated Defendant's policies, Reyes discriminatorily disciplined Mr. Stanley for these actions. To be clear, Defendant had non-black employees who worked more than 40 hours, wore clothing with Defendant's logo, and ate lunch at work, but Reyes did not issue them write ups for those reasons.

78.     Reyes additionally wrote Mr. Stanley up after falsely accusing him of misplacing a bag that was supposed to be transported to the Miami location. Mr. Stanley explained that the misplacement of the bag was not his fault. In fact, Mr. Stanley explained that there was video evidence to prove that Alejandro [Last Name Unknown], Mr. Stanley's non-black coworker, was responsible for the misplacement of the bag. Reyes told Mr. Stanley that even if the video exonerated Mr. Stanley and proved that Alejandro misplaced the bag, Reyes would still blame Mr. Stanley.

79.     On another occasion while Mr. Stanley was working, Mr. Stanley transported a bag of money to the Miami location but there was one single penny missing. Reyes and another manager, Alex [Last Name Unknown], immediately accused Mr. Stanley of theft and issued Mr. Stanley a write up. Upon further inquiry, the customer informed Reyes and Alex that they had miscounted and forgot to include the single penny in their total. Reyes did not withdraw Mr. Stanley's write-up or apologize for wrongfully accusing him of committing theft.

80.     At one point, Mr. Smith injured himself at work and obtained a worker's compensation accommodation of "light duty." Despite the accommodation, Reyes assigned Smith the task of sitting on a crate to count pennies for hours on end. Mr. Smith explained that his back was injured and that he had an accommodation, but Reyes ignored him and continued to assign Smith this task.

81.     Throughout the duration of Reyes' supervision of Plaintiffs, Plaintiffs frequently reported race discrimination to Sanchez. Mr. Edwards and Mr. Smith reported the unlawful activity on a few occasions, but Mr. Stanley consistently reported Reyes' conduct to Sanchez regularly.

82.     Mr. Stanley reported Reyes for race discrimination to Sanchez many times. Each and every time, Sanchez brushed off Mr. Stanley's complaints without questioning the validity of the report or complaint.

83.     Plaintiffs pleaded with Sanchez to ensure race played no factor in the workplace. Plaintiffs begged Sanchez to change the racist workplace culture so they could do their job to the best of their abilities.

84.     Mr. Stanley stated to Sanchez that he was devastated by Defendant's treatment of him and his fellow black colleagues, because the black employees were treated significantly worse than non-black employees and nothing was being done to correct this.

85.     Mr. Edwards and Mr. Smith saw Mr. Stanley report race discrimination on many occasions and were frustrated that nothing was done.

86.     In fact, Mr. Stanley's reports of race discrimination and sexual harassment were so well known in Defendant's workplace that his non-black coworker, [First Name Unknown] Mendoza, solely referred to Mr. Stanley as "*chivato*" (a Spanish word that translates to "*snitch*").

87.     Mr. Stanley filed many written complaints to both Reyes and Sanchez, yet no action was taken. Plaintiffs even saw Sanchez throw one of Mr. Stanley's written complaints of Defendant's unlawful discrimination and harassment into the trash.

88.     As a result of Plaintiffs' frequent reports and complaints of discrimination, Reyes assigned them almost double the work that they previously had to perform.

89.     Plaintiffs typically performed 25-30 stops per day, where they would drive a company truck to a client and pick up or drop off money. Following Plaintiffs' complaints and reports, Reyes began assigning Plaintiffs closer to 50-60 stops per day, which was not feasible. Importantly, Reyes had previously disciplined Mr. Stanley for working over 40 hours, but he now required Mr. Stanley to perform double the normal workload.

90.     Reyes would further deny Mr. Smith the right to leave after completing eight (8) hours of work, despite know that Mr. Smith is a single father and needed to pick his son up from school.

91.     In or around October of 2023, Mr. Stanley was driving the truck to deliver money alongside a non-black coworker. The two accidentally delivered money to the wrong company during their shift, a common error for Defendant's employees. Defendant typically provided its employees with time to rectify the situation. However, Reyes suspended Mr. Stanley for this. Reyes did not discipline the other non-black driver whatsoever for his shared-responsibility of this

error. Reyes did not even write up the other non-black employee, but Mr. Stanley was written up and suspended for the very same action.

92.    Mr. Stanley appealed the write-up and suspension, but no further action was taken.

93.    Mr. Edwards, Mr. Smith, and Mr. Stanley's black coworkers expressed their sympathy to Mr. Stanley, stating that his punishment and suspension was not warranted, and they believed he was only being suspended because he reported race discrimination and sexual harassment.

94.    Following this suspension, Defendant terminated Mr. Stanley. Defendant informed Mr. Stanley that the reason for his termination was because Mr. Stanley did not get along with Defendant's managers and employees.

95.    Defendant's suspension and termination of Mr. Stanley came following his repeated reports of sexual harassment and racism to Defendant's HR and managers.

96.    As a result of Mr. Stanley's reporting of unlawful sexual harassment, race discrimination, and segregation, Defendant, by and through its agents, suspended and wrongfully terminated Mr. Stanley in or around late October of 2023.

97.    In or around February of 2024, Defendant's workplace had become so hostile that Mr. Edwards and Mr. Smith both expressed to Defendant that they felt their livelihood was threatened to work in the office.

98.    Defendant took no action to resolve this concern, ultimately encouraging and supporting a workplace saturated with racism, sexual harassment, and segregation.

99.    As a result of Mr. Edwards' reporting of unlawful sexual harassment, race discrimination, and segregation, Defendant, by and through its agents, suspended and wrongfully terminated Mr. Stanley in or around February 15, 2024.

100.    As a result of Mr. Smith's reporting of unlawful sexual harassment, race discrimination, and segregation, Defendant, by and through its agents, suspended and wrongfully terminated Mr. Smith in or around February of 2024.

101.    Defendant LOOMIS unlawfully and wrongfully terminated Plaintiffs because of their race and color, and in retaliation for their repeated complaints of unlawful conduct.

102.    The above-described conduct are just some examples of the discriminatory conduct and retaliation to which Defendant subjected Plaintiffs.

103.    Defendant unlawfully discriminated against Plaintiffs on the basis of their race and color and retaliated against Plaintiffs for opposing Defendant's unlawful employment practices.

104.    Defendant violated Section 1981, Title VII, the FCRA, and the MDHRO by subjecting Plaintiffs to a hostile work environment, disparate treatment, and retaliation.

105.    At all relevant times, Defendant's employees were acting as agents of Defendant in their discriminatory, retaliatory, and unlawful treatment of Plaintiffs.

106.    At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

107.    As a result of Defendant's actions, Mr. Stanley felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

108.    As a result of Defendant's actions, Mr. Edwards felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

109.    As a result of Defendant's actions, Mr. Smith felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

110.    As a result of the act and conduct complained herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other

compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional and physical distress.

111.    Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

112.    Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained herein.

**CAUSES OF ACTION**
**COUNT I**
**42 U.S.C. § 1981**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Stanley as against Defendant)**

113.    Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

114.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

115.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

116.    Mr. Stanley is a black individual, and he is therefore a protected class member.

117.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

118.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

119.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color each and every day, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

120.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

121.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

122.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

123.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

124.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

125.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

126.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 1981**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

127.    Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

128.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

129.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

130.    Mr. Stanley is a black individual, and he is therefore a protected class member.

131.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

132.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

133.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

134.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

135.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

136.    Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

137.    Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

138.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

139.    Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

140.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT III
### 42 U.S.C. § 1981
### RETALIATION
### (Plaintiff Stanley as against Defendant)

141.    Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

142.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

143.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

144.   The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

145.   Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Section 1981.

146.   Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

147.   Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

148.   Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

149.   Mr. Stanley engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

150.   After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

151.   In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Stanley explained that Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

152.   There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

153.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

154.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

155.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

156.     Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

157.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

158.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

159.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

160.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

161.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

162.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 1981**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

163.     Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

164.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

165.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

166.     Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism directly to Defendant's managers and human resources.

167.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

168.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley in violation of Section 1981.

169.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Stanley to report to Reyes after complaining about him, 3) assigning Mr. Stanley additional tasks, 4) denying Mr. Stanley additional training, 5) issuing Mr. Stanley unjustified write-ups, 6) suspending Mr. Stanley, and 7) unlawfully terminating Mr. Stanley.

170.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

171.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

172.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

173.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Sections 1981.

174.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law

### COUNT V
### 42 U.S.C. § 2000e-2
### RACE AND COLOR DISCRIMINATION
### (Plaintiff Stanley as against Defendant)

175.     Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

176.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

177.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

178.     Mr. Stanley is a black individual, and he is therefore a protected class member.

179.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

180.     Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

181.     Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double

the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

182. Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

183. The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

184. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

185. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

186.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

187.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Section 1981.

188.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**42 U.S.C. § 2000e-2**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

189.     Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

190.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

191.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

192.     Mr. Stanley is a black individual, and he is therefore a protected class member.

193.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

194.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

195.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

196.     Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

197.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

198.     Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

199.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

200.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

201.   Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

202.   Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**42 U.S.C. § 2000e-3**
**RETALIATION**
**(Plaintiff Stanley as against Defendant)**

203.   Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

204.   Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

205.   The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

206.   Defendant retaliated against Mr. Stanley for reporting discrimination on the basis of his race and skin color in violation of Title VII.

207.   Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

208.   Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

209.   Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

210.   Mr. Stanley engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

211.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

212.    In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Stanley explained that Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

213.    There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

214.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

215.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

216.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

217.    Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

218.     Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

219.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

220.     Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

221.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

222.     Defendant's conduct deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

223.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VIII**
**42 U.S.C. § 2000e-3**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

224.     Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

225.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

226.     Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

227.     Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

228.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

229.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Stanley to report to Reyes after complaining about him, 3) assigning Mr. Stanley additional tasks, 4) denying Mr. Stanley additional training, 5) issuing Mr. Stanley unjustified write-ups, 6) suspending Mr. Stanley, and 7) unlawfully terminating Mr. Stanley.

230.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

231.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

232.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under Title VII.

233.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.10(1), Fla. Stat.**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Stanley as against Defendant)**

234.    Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

235.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and color. § 760.10(1)(a), Fla. Stat.

236.    Mr. Stanley is a black individual, and he is therefore a protected class member.

237.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

238.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

239.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying

Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

240.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

241.    The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

242.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

243.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

244.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

245.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**§ 760.10(1), Fla. Stat.**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

246.     Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

247.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and skin color. § 760.10(1), Fla. Stat.

248.     Mr. Stanley is a black individual, and he is therefore a protected class member.

249.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

250.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

251.     Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

252.     Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

253.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

254.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

255.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

256.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XI**
**§ 760.10(7), Fla. Stat.**
**RETALIATION**
**(Plaintiff Stanley as against Defendant)**

257.     Mr. Stanley reincorporates the factual allegations in Paragraphs 24 through 112.

258.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

259.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

260.     Mr. Stanley engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his race and color.

261.     Mr. Stanley engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

262.     Mr. Stanley was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

263.     Defendant's actions were "materially adverse" because he were serious enough to discourage a reasonable worker from engaging in similar protected activity.

264.     Mr. Stanley engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

265.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

266.     In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Stanley explained that Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

267.    There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

268.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

269.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

270.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

271.    Any reasonable employee in Mr. Stanley's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

272.    Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

273.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

274.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

275.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

276.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XII**
**§ 760.10(7), Fla. Stat.**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

277.     Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

278.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

279.     Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

280.     Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

281.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

282.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each

and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Stanley to report to Reyes after complaining about him, 3) assigning Mr. Stanley additional tasks, 4) denying Mr. Stanley additional training, 5) issuing Mr. Stanley unjustified write-ups, 6) suspending Mr. Stanley, and 7) unlawfully terminating Mr. Stanley.

283.   The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

284.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

285.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

286.   The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the FCRA.

287.   Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

### COUNT XIII
### § 11A-26(1), Code of Miami-Dade County
### RACE AND COLOR DISCRIMINATION
### (Plaintiff Stanley as against Defendant)

288.   Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

289.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

290.    Mr. Stanley is a black individual, and he is therefore a protected class member.

291.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

292.    Defendant subjected Mr. Stanley to discriminatory treatment on the basis of his race and skin color.

293.    Defendant's discriminatory treatment included 1) subjecting Mr. Stanley to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) failing to train Mr. Stanley for his position, 3) assigning nearly double the number of tasks to Mr. Stanley compared to his non-Black coworkers, 4) refusing Mr. Stanley access to the lunch room during his lunch break and forcing him to eat in his vehicle, 5) denying Mr. Stanley the same employment privileges afforded to his non-Black co-workers, 6) maintaining a segregated lounge area in the workplace, where Mr. Stanley and his Black co-workers were denied access to certain utilities, including the microwave and television, 7) wrongfully issuing Mr. Stanley write-ups, 8) wrongfully suspending Mr. Stanley, and 9) unlawfully terminating Mr. Stanley's employment, among others.

294.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Stanley was forced to endure.

295.     The discriminatory actions of Defendant against Mr. Stanley, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Mr. Stanley to adverse employment actions, Defendant intentionally discriminated against Mr. Stanley with respect to the compensation, terms, conditions, or privileges of his employment.

296.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

297.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

298.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

299.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIV**
**§ 11A-26(1), Code of Miami-Dade County**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

300.     Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

301.    The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race or color. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

302.    Mr. Stanley is a black individual, and he is therefore a protected class member.

303.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

304.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Stanley to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Stanley in front of his coworkers, 4) expecting Mr. Stanley to train himself in lieu of proper training, and 5) assigning Mr. Stanley nearly double the tasks assigned to his non-Black coworkers.

305.    Defendant targeted Mr. Stanley because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Stanley was forced to endure.

306.    Defendant's discriminatory conduct toward Mr. Stanley negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Stanley feel isolated, humiliated, embarrassed, and ashamed.

307.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

308.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

309.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

310.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XV**
**§ 11A-43(1), Code of Miami-Dade County**
**RETALIATION**
**(Plaintiff Stanley as against Defendant)**

311.    Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

312.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

313.    Mr. Stanley engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

314.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Stanley additional tasks while continuing to racially disparage Mr. Stanley.

315.    In or around October of 2023, Mr. Stanley again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Stanley explained that Reyes only disciplined Mr. Stanley for conduct that was committed by Mr. Stanley and a non-black employee. Following this report, Defendant suspended Mr. Stanley and terminated his employment.

316.    There is a causal connection between Mr. Stanley's reports of unlawful discrimination and Defendant terminating Mr. Stanley's employment.

317.    In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

318.    Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) forcing Mr. Stanley to report to Reyes after complaining about him, 2) assigning Mr. Stanley additional tasks, 3) denying Mr. Stanley additional training, 4) issuing Mr. Stanley unjustified write-ups, 5) suspending Mr. Stanley, and 6) unlawfully terminating Mr. Stanley.

319.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Stanley because of his protected activities.

320.    Any reasonable employee in Mr. Stanley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Stanley was forced to endure.

321.    Defendant's alleged bases for its adverse employment actions against Mr. Stanley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

322.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages

in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

323.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

324.    The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

325.    Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XVI**
**§ 11A-43(1), Code of Miami-Dade County**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Stanley as against Defendant)**

326.    Mr. Stanley reincorporates the factual allegations in paragraphs 24 through 112.

327.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

328.    Mr. Stanley was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

329.    Mr. Stanley's opposition was made in good faith and was objectively and subjectively reasonable.

330.     In response to Mr. Stanley opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Stanley.

331.     Defendant retaliated against Mr. Stanley by engaging in conduct, including but not limited to, 1) subjecting Mr. Stanley to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Stanley to report to Reyes after complaining about him, 3) assigning Mr. Stanley additional tasks, 4) denying Mr. Stanley additional training, 5) issuing Mr. Stanley unjustified write-ups, 6) suspending Mr. Stanley, and 7) unlawfully terminating Mr. Stanley.

332.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Stanley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Stanley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Stanley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

333.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Stanley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

334.     The conduct of Defendant deprived Mr. Stanley of his statutory rights guaranteed under the MDHRO.

335.     Mr. Stanley further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XVII
### 42 U.S.C. § 1981
### RACE AND COLOR DISCRIMINATION
### (Plaintiff Edwards as against Defendant)

336.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

337.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

338.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

339.    Mr. Edwards is a black individual, and he is therefore a protected class member.

340.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

341.    Defendant subjected Mr. Edwards to discriminatory treatment on the basis of his race and skin color.

342.    Defendant's discriminatory treatment included 1) subjecting Mr. Edwards to discriminatory comments regarding his race and color each and every day, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Edwards compared to his non-Black coworkers, 3) refusing Mr. Edwards access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Edwards the same employment privileges afforded to his non-Black co-workers, 5) maintaining a segregated lounge

47

area in the workplace, where Mr. Edwards and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Edwards write-ups, 7) wrongfully suspending Mr. Edwards, and 8) unlawfully terminating Mr. Edwards' employment, among others.

343.    Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Edwards was forced to endure.

344.    The discriminatory actions of Defendant against Mr. Edwards, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Edwards to adverse employment actions, Defendant intentionally discriminated against Mr. Edwards with respect to the compensation, terms, conditions, or privileges of his employment.

345.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

346.    Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

347.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

348.    Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Section 1981.

349. Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XVIII
### 42 U.S.C. § 1981
### HOSTILE WORK ENVIRONMENT
### (Plaintiff Edwards as against Defendant)

350. Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

351. Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

352. Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

353. Mr. Edwards is a black individual, and he is therefore a protected class member.

354. The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

355. Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Edwards to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Edwards in

49

front of his coworkers, and 4) assigning Mr. Edwards nearly double the tasks assigned to his non-Black coworkers.

356.    Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Edwards was forced to endure.

357.    Defendant's discriminatory conduct toward Mr. Edwards negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Edwards feel isolated, humiliated, embarrassed, and ashamed.

358.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

359.    Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

360.    Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

361.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

362.    Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Section 1981.

363.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIX**
**42 U.S.C. § 1981**
**RETALIATION**
**(Plaintiff Edwards as against Defendant)**

364.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

365.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

366.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

367.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

368.    Defendant retaliated against Mr. Edwards for reporting discrimination on the basis of his race and skin color in violation of Section 1981.

369.    Mr. Edwards engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

370.    Mr. Edwards was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

371.    Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

372.     Mr. Edwards engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

373.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Edwards additional tasks while continuing to racially disparage Mr. Edwards.

374.     In or around February of 2024, Mr. Edwards again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Edwards explained that Reyes only disciplined Mr. Edwards for conduct that was committed by Mr. Edwards and a non-black employee. Following this report, Defendant suspended Mr. Edwards and terminated his employment.

375.     There is a causal connection between Mr. Edwards' reports of unlawful discrimination and Defendant terminating Mr. Edwards' employment.

376.     In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards.

377.     Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) forcing Mr. Edwards to report to Reyes after complaining about him, 2) assigning Mr. Edwards additional tasks, 3) issuing Mr. Edwards unjustified write-ups, 4) suspending Mr. Edwards, and 5) unlawfully terminating Mr. Edwards.

378.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Edwards because of his protected activities.

379.   Any reasonable employee in Mr. Edwards' position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Edwards was forced to endure.

380.   Defendant's alleged bases for its adverse employment actions against Mr. Edwards are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

381.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

382.   Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

383.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

384.   Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Section 1981.

385.   Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XX**
**42 U.S.C. § 1981**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Edwards as against Defendant)**

386.   Mr. Edwards reincorporates the factual allegations in paragraphs 24 through 112.

387.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

388.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

389.     Mr. Edwards was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism directly to Defendant's managers and human resources.

390.     Mr. Edwards' opposition was made in good faith and was objectively and subjectively reasonable.

391.     In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards in violation of Section 1981.

392.     Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Edwards to report to Reyes after complaining about him, 3) assigning Mr. Edwards additional tasks, 4) issuing Mr. Edwards unjustified write-ups, 5) suspending Mr. Edwards, and 6) unlawfully terminating Mr. Edwards.

393.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

394.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

395.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

396.    The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under Sections 1981.

397.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law

**COUNT XXI**
**42 U.S.C. § 2000e-2**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Edwards as against Defendant)**

398.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

399.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

400.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

401.     Mr. Edwards is a black individual, and he is therefore a protected class member.

402.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

403.     Defendant subjected Mr. Edwards to discriminatory treatment on the basis of his race and skin color.

404.     Defendant's discriminatory treatment included 1) subjecting Mr. Edwards to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Edwards compared to his non-Black coworkers, 3) refusing Mr. Edwards access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Edwards the same employment privileges afforded to his non-Black co-workers, 5) maintaining a segregated lounge area in the workplace, where Mr. Edwards and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Edwards write-ups, 7) wrongfully suspending Mr. Edwards, and 8) unlawfully terminating Mr. Edwards' employment, among others.

405.     Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Edwards was forced to endure.

406.     The discriminatory actions of Defendant against Mr. Edwards, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Edwards to adverse employment actions, Defendant intentionally discriminated against Mr. Edwards with respect to the compensation, terms, conditions, or privileges of his employment.

407.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

408.     Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

409.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

410.     Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Section 1981.

411.     Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXII**
**42 U.S.C. § 2000e-2**
**HOSTILE WORK ENVIRONMENT**
**((Plaintiff Edwards as against Defendant))**

412.     Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

413.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

414.   Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

415.   Mr. Edwards is a black individual, and he is therefore a protected class member.

416.   The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

417.   Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Edwards to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Edwards in front of his coworkers, and 4) assigning Mr. Edwards nearly double the tasks assigned to his non-Black coworkers.

418.   Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Edwards was forced to endure.

419.   Defendant's discriminatory conduct toward Mr. Edwards negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Edwards feel isolated, humiliated, embarrassed, and ashamed.

420.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

421.     Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

422.     Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

423.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

424.     Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Title VII.

425.     Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXIII**
**42 U.S.C. § 2000e-3**
**RETALIATION**
**(Plaintiff Edwards as against Defendant)**

426.     Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

427.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

428.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

429.    Defendant retaliated against Mr. Edwards for reporting discrimination on the basis of his race and skin color in violation of Title VII.

430.    Mr. Edwards engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

431.    Mr. Edwards was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

432.    Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

433.    Mr. Edwards engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

434.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Edwards additional tasks while continuing to racially disparage Mr. Edwards.

435.    In or around February of 2024, Mr. Edwards again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Edwards explained that Reyes only disciplined Mr. Edwards for conduct that was committed by Mr. Edwards and a non-black employee. Following this report, Defendant suspended Mr. Edwards and terminated his employment.

436.    There is a causal connection between Mr. Edwards' reports of unlawful discrimination and Defendant terminating Mr. Edwards' employment.

437.    In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards.

438.    Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) forcing Mr. Edwards to report to Reyes after complaining about him, 2) assigning Mr. Edwards additional tasks, 3) issuing Mr. Edwards unjustified write-ups, 4) suspending Mr. Edwards, and 5) unlawfully terminating Mr. Edwards.

439.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Edwards because of his protected activities.

440.    Any reasonable employee in Mr. Edwards' position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Edwards was forced to endure.

441.    Defendant's alleged bases for its adverse employment actions against Mr. Edwards are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

442.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

443.    Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

444.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

445.    Defendant's conduct deprived Mr. Edwards of his statutory rights guaranteed under Title VII.

446.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXIV**
**42 U.S.C. § 2000e-3**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Edwards as against Defendant)**

447.    Mr. Edwards reincorporates the factual allegations in paragraphs 24 through 112.

448.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

449.    Mr. Edwards was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

450.    Mr. Edwards' opposition was made in good faith and was objectively and subjectively reasonable.

451.    In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards.

452.    Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Edwards to report to Reyes after complaining about him, 3) assigning Mr. Edwards additional tasks, 4) issuing Mr. Edwards unjustified write-ups, 5) suspending Mr. Edwards, and 6) unlawfully terminating Mr. Edwards.

453.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

454.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

455.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

456.    The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under Title VII.

457.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**<u>COUNT XXV</u>**
**§ 760.10(1), Fla. Stat.**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Edwards as against Defendant)**

458.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

459.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and color. § 760.10(1)(a), Fla. Stat.

460.    Mr. Edwards is a black individual, and he is therefore a protected class member.

461.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

462.    Defendant subjected Mr. Edwards to discriminatory treatment on the basis of his race and skin color.

463.    Defendant's discriminatory treatment included 1) subjecting Mr. Edwards to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Edwards compared to his non-Black coworkers, 3) refusing Mr. Edwards access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Edwards the same employment privileges afforded to his non-Black co-workers, 5) maintaining a segregated lounge area in the workplace, where Mr. Edwards and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Edwards write-ups, 7) wrongfully suspending Mr. Edwards, and 8) unlawfully terminating Mr. Edwards' employment, among others.

464.    Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Edwards was forced to endure.

465.    The discriminatory actions of Defendant against Mr. Edwards, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting Mr. Edwards to adverse employment actions, Defendant intentionally discriminated against Mr. Edwards with respect to the compensation, terms, conditions, or privileges of his employment.

466.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Edwards has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

467.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

468.    The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under the FCRA.

469.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXVI**
**§ 760.10(1), Fla. Stat.**
**HOSTILE WORK ENVIRONMENT**
**(Plaintiff Edwards as against Defendant)**

470.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

471.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and skin color. § 760.10(1), Fla. Stat.

472.    Mr. Edwards is a black individual, and he is therefore a protected class member.

473.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

474.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Edwards to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," and "you look so tasty, I want to eat you up," 3) screaming at Mr. Edwards in front of his coworkers, and 4) assigning Mr. Edwards nearly double the tasks assigned to his non-Black coworkers.

475.    Defendant targeted Mr. Edwards because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Edwards was forced to endure.

476.    Defendant's discriminatory conduct toward Mr. Edwards negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Edwards feel isolated, humiliated, embarrassed, and ashamed.

477.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

478.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Edwards' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

479.    The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under the FCRA.

480.    Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXVII**
**§ 760.10(7), Fla. Stat.**
**RETALIATION**
**(Plaintiff Edwards as against Defendant)**

481.    Mr. Edwards reincorporates the factual allegations in Paragraphs 24 through 112.

482.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

483.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

484.    Mr. Edwards engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his race and color.

485.    Mr. Edwards engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

486.    Mr. Edwards was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

487.    Defendant's actions were "materially adverse" because he were serious enough to discourage a reasonable worker from engaging in similar protected activity.

488.    Mr. Edwards engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

489.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Edwards additional tasks while continuing to racially disparage Mr. Edwards.

490.     In or around February of 2024, Mr. Edwards again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Edwards explained that Reyes only disciplined Mr. Edwards for conduct that was committed by Mr. Edwards and a non-black employee. Following this report, Defendant suspended Mr. Edwards and terminated his employment.

491.     There is a causal connection between Mr. Edwards' reports of unlawful discrimination and Defendant terminating Mr. Edwards' employment.

492.     In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards.

493.     Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) forcing Mr. Edwards to report to Reyes after complaining about him, 2) assigning Mr. Edwards additional tasks, 3) issuing Mr. Edwards unjustified write-ups, 4) suspending Mr. Edwards, and 5) unlawfully terminating Mr. Edwards.

494.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Edwards because of his protected activities.

495.     Any reasonable employee in Mr. Edwards' position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Edwards was forced to endure.

496.     Defendant's alleged bases for its adverse employment actions against Mr. Edwards are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

497.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

498.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Edwards' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

499.     The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under the FCRA.

500.     Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXVIII**
**§ 760.10(7), Fla. Stat.**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Edwards as against Defendant)**

501.     Mr. Edwards reincorporates the factual allegations in paragraphs 24 through 112.

502.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

503.   Mr. Edwards was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

504.   Mr. Edwards' opposition was made in good faith and was objectively and subjectively reasonable.

505.   In response to Mr. Edwards opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Edwards.

506.   Defendant retaliated against Mr. Edwards by engaging in conduct, including but not limited to, 1) subjecting Mr. Edwards to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Edwards to report to Reyes after complaining about him, 3) assigning Mr. Edwards additional tasks, 4) issuing Mr. Edwards unjustified write-ups, 5) suspending Mr. Edwards, and 6) unlawfully terminating Mr. Edwards.

507.   The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

508.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Edwards has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Edwards has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Edwards accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

509.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Edwards' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

510.     The conduct of Defendant deprived Mr. Edwards of his statutory rights guaranteed under the FCRA.

511.     Mr. Edwards further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXIX**
**42 U.S.C. § 1981**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Smith as against Defendant)**

512.     Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

513.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

514.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

515.     Mr. Smith is a black individual, and he is therefore a protected class member.

516.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

517.     Defendant subjected Mr. Smith to discriminatory treatment on the basis of his race and skin color.

518.     Defendant's discriminatory treatment included 1) subjecting Mr. Smith to discriminatory comments regarding his race and color each and every day, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Smith compared to his non-Black coworkers, 3) refusing Mr. Smith access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Smith the same employment privileges afforded to his non-Black co-workers, 5) maintaining a segregated lounge area in the workplace, where Mr. Smith and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Smith write-ups, 7) wrongfully suspending Mr. Smith, and 8) unlawfully terminating Mr. Smith's employment, among others.

519.     Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Smith was forced to endure.

520.     The discriminatory actions of Defendant against Mr. Smith, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Smith to adverse employment actions, Defendant intentionally discriminated against Mr. Smith with respect to the compensation, terms, conditions, or privileges of his employment.

521.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Smith has

also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

522.    Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

523.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

524.    Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Section 1981.

525.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XXX
### 42 U.S.C. § 1981
### HOSTILE WORK ENVIRONMENT
### (Plaintiff Smith as against Defendant)

526.    Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

527.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

528.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

529.     Mr. Smith is a black individual, and he is therefore a protected class member.

530.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

531.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Smith to humiliating, sexually harassing comments each and every day such as "*maricon*," *"puta*," "I'm gonna take you home tonight," "you're so sexy," "you look so tasty, I want to eat you up," and "let me finger you" 3) screaming at Mr. Smith in front of his coworkers, and 4) assigning Mr. Smith nearly double the tasks assigned to his non-Black coworkers.

532.     Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Smith was forced to endure.

533.     Defendant's discriminatory conduct toward Mr. Smith negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Smith feel isolated, humiliated, embarrassed, and ashamed.

534.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

535.     Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

536.     Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

537.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

538.     Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Section 1981.

539.     Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXXI**
**42 U.S.C. § 1981**
**RETALIATION**
**(Plaintiff Smith as against Defendant)**

540.     Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

541.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

542.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

543.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

544.     Defendant retaliated against Mr. Smith for reporting discrimination on the basis of his race and skin color in violation of Section 1981.

545.     Mr. Smith engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

546.     Mr. Smith was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

547.     Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

548.     Mr. Smith engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

549.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Smith additional tasks while continuing to racially disparage Mr. Smith.

550.     In or around February of 2024, Mr. Smith again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Smith explained that Reyes only disciplined Mr. Smith for conduct that was committed by Mr. Smith and a non-black employee. Following this report, Defendant suspended Mr. Smith and terminated his employment.

551.     There is a causal connection between Mr. Smith's reports of unlawful discrimination and Defendant terminating Mr. Smith's employment.

552.     In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith.

553.    Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) forcing Mr. Smith to report to Reyes after complaining about him, 2) assigning Mr. Smith additional tasks, 3) issuing Mr. Smith unjustified write-ups, 4) suspending Mr. Smith, and 5) unlawfully terminating Mr. Smith.

554.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Smith because of his protected activities.

555.    Any reasonable employee in Mr. Smith's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Smith was forced to endure.

556.    Defendant's alleged bases for its adverse employment actions against Mr. Smith are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

557.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

558.    Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

559.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

560.    Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Section 1981.

561.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXXII**
**42 U.S.C. § 1981**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Smith as against Defendant)**

562.    Mr. Smith reincorporates the factual allegations in paragraphs 24 through 112.

563.    Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

564.    Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

565.    Mr. Smith was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism directly to Defendant's managers and human resources.

566.    Mr. Smith's opposition was made in good faith and was objectively and subjectively reasonable.

567.    In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith in violation of Section 1981.

568.    Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Smith to report to Reyes after complaining about him, 3) assigning Mr. Smith additional tasks, 4) issuing Mr. Smith unjustified write-ups, 5) suspending Mr. Smith, and 6) unlawfully terminating Mr. Smith.

569.    The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

570.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

571.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

572.    The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under Sections 1981.

573.     Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law

## COUNT XXXIII
### 42 U.S.C. § 2000e-2
### RACE AND COLOR DISCRIMINATION
### (Plaintiff Smith as against Defendant)

574.     Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

575.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

576.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

577.     Mr. Smith is a black individual, and he is therefore a protected class member.

578.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

579.     Defendant subjected Mr. Smith to discriminatory treatment on the basis of his race and skin color.

580.     Defendant's discriminatory treatment included 1) subjecting Mr. Smith to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Smith compared to his non-Black coworkers, 3) refusing Mr. Smith access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Smith the same employment privileges

afforded to his non-Black co-workers, 5) maintaining a segregated lounge area in the workplace, where Mr. Smith and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Smith write-ups, 7) wrongfully suspending Mr. Smith, and 8) unlawfully terminating Mr. Smith's employment, among others.

581.    Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Smith was forced to endure.

582.    The discriminatory actions of Defendant against Mr. Smith, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Smith to adverse employment actions, Defendant intentionally discriminated against Mr. Smith with respect to the compensation, terms, conditions, or privileges of his employment.

583.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

584.    Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

585.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

586.    Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Section 1981.

587.     Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XXXIV
### 42 U.S.C. § 2000e-2
### HOSTILE WORK ENVIRONMENT
### ((Plaintiff Smith as against Defendant))

588.     Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

589.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

590.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

591.     Mr. Smith is a black individual, and he is therefore a protected class member.

592.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

593.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Smith to humiliating, sexually harassing comments each and every day such as "*maricon*," "*puta*," "I'm gonna take you home tonight," "you're so sexy," "you look so tasty, I want to eat you up," and "let me finger you" 3) screaming

at Mr. Smith in front of his coworkers, and 4) assigning Mr. Smith nearly double the tasks assigned to his non-Black coworkers.

594.    Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Smith was forced to endure.

595.    Defendant's discriminatory conduct toward Mr. Smith negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Smith feel isolated, humiliated, embarrassed, and ashamed.

596.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

597.    Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

598.    Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

599.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

600.    Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Title VII.

601.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XXXV
### 42 U.S.C. § 2000e-3
### RETALIATION
### (Plaintiff Smith as against Defendant)

602.    Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

603.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

604.    The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

605.    Defendant retaliated against Mr. Smith for reporting discrimination on the basis of his race and skin color in violation of Title VII.

606.    Mr. Smith engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

607.    Mr. Smith was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

608.    Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

609.    Mr. Smith engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

610.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Smith additional tasks while continuing to racially disparage Mr. Smith.

611.    In or around February of 2024, Mr. Smith again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Smith explained that Reyes only

disciplined Mr. Smith for conduct that was committed by Mr. Smith and a non-black employee. Following this report, Defendant suspended Mr. Smith and terminated his employment.

612.    There is a causal connection between Mr. Smith's reports of unlawful discrimination and Defendant terminating Mr. Smith's employment.

613.    In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith.

614.    Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) forcing Mr. Smith to report to Reyes after complaining about him, 2) assigning Mr. Smith additional tasks, 3) issuing Mr. Smith unjustified write-ups, 4) suspending Mr. Smith, and 5) unlawfully terminating Mr. Smith.

615.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Smith because of his protected activities.

616.    Any reasonable employee in Mr. Smith's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Smith was forced to endure.

617.    Defendant's alleged bases for its adverse employment actions against Mr. Smith are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

618.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Smith has also

suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

619.    Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

620.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

621.    Defendant's conduct deprived Mr. Smith of his statutory rights guaranteed under Title VII.

622.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXXVI**
**42 U.S.C. § 2000e-3**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Smith as against Defendant)**

623.    Mr. Smith reincorporates the factual allegations in paragraphs 24 through 112.

624.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

625.    Mr. Smith was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

626.    Mr. Smith's opposition was made in good faith and was objectively and subjectively reasonable.

627.     In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith.

628.     Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Smith to report to Reyes after complaining about him, 3) assigning Mr. Smith additional tasks, 4) issuing Mr. Smith unjustified write-ups, 5) suspending Mr. Smith, and 6) unlawfully terminating Mr. Smith.

629.     The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

630.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

631.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

632.     The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under Title VII.

633.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXXVII**
**§ 760.10(1), Fla. Stat.**
**RACE AND COLOR DISCRIMINATION**
**(Plaintiff Smith as against Defendant)**

634.    Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

635.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and color. § 760.10(1)(a), Fla. Stat.

636.    Mr. Smith is a black individual, and he is therefore a protected class member.

637.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

638.    Defendant subjected Mr. Smith to discriminatory treatment on the basis of his race and skin color.

639.    Defendant's discriminatory treatment included 1) subjecting Mr. Smith to discriminatory comments regarding his race and color, including but not limited to the words "*nigger*," and "*negro*", 2) assigning nearly double the number of tasks to Mr. Smith compared to his non-Black coworkers, 3) refusing Mr. Smith access to the lunch room during his lunch break and forcing him to eat in his vehicle, 4) denying Mr. Smith the same employment privileges afforded to his non-Black co-workers, 5) maintaining a segregated lounge area in the workplace, where Mr. Smith and his Black co-workers were denied access to certain utilities, including the microwave and television, 6) wrongfully issuing Mr. Smith write-ups, 7) wrongfully suspending Mr. Smith, and 8) unlawfully terminating Mr. Smith's employment, among others.

640.    Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Smith was forced to endure.

641.    The discriminatory actions of Defendant against Mr. Smith, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting Mr. Smith to adverse employment actions, Defendant intentionally discriminated against Mr. Smith with respect to the compensation, terms, conditions, or privileges of his employment.

642.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

643.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

644.    The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under the FCRA.

645.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XXXVIII
### § 760.10(1), Fla. Stat.
### HOSTILE WORK ENVIRONMENT
### (Plaintiff Smith as against Defendant)

646.    Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

647.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and skin color. § 760.10(1), Fla. Stat.

648.    Mr. Smith is a black individual, and he is therefore a protected class member.

649.    The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

650.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) subjecting Mr. Smith to humiliating, sexually harassing comments each and every day such as "*maricon*," *"puta*," "I'm gonna take you home tonight," "you're so sexy," "you look so tasty, I want to eat you up," and "let me finger you" 3) screaming at Mr. Smith in front of his coworkers, and 4) assigning Mr. Smith nearly double the tasks assigned to his non-Black coworkers.

651.    Defendant targeted Mr. Smith because he is black. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Smith was forced to endure.

652.    Defendant's discriminatory conduct toward Mr. Smith negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Smith feel isolated, humiliated, embarrassed, and ashamed.

653.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

654.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Smith's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

655.     The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under the FCRA.

656.     Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXXIX**
**§ 760.10(7), Fla. Stat.**
**RETALIATION**
**(Plaintiff Smith as against Defendant)**

657.     Mr. Smith reincorporates the factual allegations in Paragraphs 24 through 112.

658.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

659.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

660.     Mr. Smith engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his race and color.

661.     Mr. Smith engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

662.     Mr. Smith was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

663.     Defendant's actions were "materially adverse" because he were serious enough to discourage a reasonable worker from engaging in similar protected activity.

664.     Mr. Smith engaged in protected activity by repeatedly reporting Reyes and Sandoval's unlawful discriminatory behavior and comments to Sanchez during his employment.

665.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Sanchez, Reyes began assigning Mr. Smith additional tasks while continuing to racially disparage Mr. Smith.

666.     In or around February of 2024, Mr. Smith again engaged in protected activity by reporting Reyes' discriminatory behavior to Sanchez. Mr. Smith explained that Reyes only disciplined Mr. Smith for conduct that was committed by Mr. Smith and a non-black employee. Following this report, Defendant suspended Mr. Smith and terminated his employment.

667.     There is a causal connection between Mr. Smith's reports of unlawful discrimination and Defendant terminating Mr. Smith's employment.

668.     In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith.

669.     Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) forcing Mr. Smith to report to Reyes after complaining about him, 2) assigning Mr. Smith additional tasks, 3) issuing Mr. Smith unjustified write-ups, 4) suspending Mr. Smith, and 5) unlawfully terminating Mr. Smith.

670.     Defendant took the above-mentioned materially adverse actions, among others, against Mr. Smith because of his protected activities.

671.     Any reasonable employee in Mr. Smith's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Smith was forced to endure.

672.     Defendant's alleged bases for its adverse employment actions against Mr. Smith are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

673.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

674.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Smith's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

675.     The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under the FCRA.

676.     Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XL**
**§ 760.10(7), Fla. Stat.**
**RETALIATORY HOSTILE WORK ENVIRONMENT**
**(Plaintiff Smith as against Defendant)**

677.     Mr. Smith reincorporates the factual allegations in paragraphs 24 through 112.

678.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

679.     Mr. Smith was subjected to a retaliatory hostile work environment because he engaged in protected activity by opposing discriminatory and unlawful conduct in the form of racism and sexual harassment directly to Defendant's managers and human resources.

680.     Mr. Smith's opposition was made in good faith and was objectively and subjectively reasonable.

681.     In response to Mr. Smith opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Smith.

682.     Defendant retaliated against Mr. Smith by engaging in conduct, including but not limited to, 1) subjecting Mr. Smith to the use of humiliating, racially disparaging remarks each and every day such as "*nigger*," and "*negro*", 2) forcing Mr. Smith to report to Reyes after complaining about him, 3) assigning Mr. Smith additional tasks, 4) issuing Mr. Smith unjustified write-ups, 5) suspending Mr. Smith, and 6) unlawfully terminating Mr. Smith.

683.     The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

684.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Smith has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Smith has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Smith accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

685.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Smith's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

686.    The conduct of Defendant deprived Mr. Smith of his statutory rights guaranteed under the FCRA.

687.    Mr. Smith further requests that his attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment against the Defendant for all damages suffered by the Plaintiffs, including emotional distress damages, punitive damages, liquidated damages, statutory damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981, Title VII, the FCRA, and the MDHRO.

Dated: Miami, Florida
April 9, 2025

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 9th day of April, 2025, I electronically filed the foregoing through the CM/ECF system and also certify that the foregoing document is being served this day on Philip R. Marchion, Esq.,  333 SE 2nd Avenue, Suite 2700, Miami, FL 33131, Email: <u>pmarchion@littler.com</u>, and Kelly M. Pena, Esq., 333 SE 2nd Avenue, Suite 2700, Miami, FL 33131, Email: <u>kpena@littler.com</u>, via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s/ Daniel J. Barroukh*</u>
Daniel J. Barroukh, Esq.
